[SUNBURY, JUNE 25, 1829.]

FRY *against* JONES and another.

IN ERROR.

On a demise of a grist mill, the lessee to render one-third of the toll, the lessor may distrain for the rent.

ERROR to the Court of Common Pleas of *Northumberland* county.

Replevin by *John G. Fry* against *John Jones* and *Amos Straw,* constable of *Augusta* township. The defendants *avowed* for rent in arrear, to which the plaintiff *replied,* no rent in arrear, and afterwards added the plea of *non demisit.*

On the trial it appeared, that *John Jones* had demised to *John G. Fry* a grist mill, and a house, and lot of ground, for the term of one year, reserving as rent " one-third of the toll which the mill grinds," for which *Jones,* the landlord, had, by a warrant directed to *Straw,* the constable, required him to distrain; averring in the warrant, that one hundred and sixty and a half bushels of different kinds of grain, amounting in value to seventy-six dollars and fifty-eight cents, remained due and unpaid.

The court charged the jury in favour of the defendants, for whom a verdict was given. A bill of exceptions to the charge having been taken, a writ of error was issued, which was argued by *Donnell,* for the plaintiff in error, who contended,

1. That the pleadings put not only the amount of rent, but the tenancy itself, in issue. The strongest defence was on the plea of *non demisit.* The plaintiff was not a tenant, but a servant, or agent, working on the shares.

2. The plaintiff could not tender the grain in satisfaction of the rent, after the distress. *Warren* v. *Forney,* 13 *Serg. & Rawle,* 52. The landlord's warrant was too general, being for different kinds of grain, without distinguishing how much of each.

3. But the main objection is, that on such a demise as this, there cannot be a distress. The third of the toll of a mill cannot be ascertained until an account is rendered by the miller. Distress can only be for a certain rent. *Co. Litt.* 142. *Ib.* 96. *Addison,* 347. *Cro. Eliz.* 143. 1 *Salk.* 162. The act of assembly of the 21st of *March,* 1772, *Purd. Dig.* 710, seems to require the rent to be certain. In the tenth section, the language is, that " it shall and may be lawful for all defendants in replevin, to avow and make cognizance generally, that the plaintiff in replevin, or other tenant of the lands and tenements whereon such distress was made, enjoyed the same under a grant, or demise, at such *certain rent or service,*" &c.

*Greenough, contra.*—The practice in this state has been in accordance with that here pursued, upwards of a century. Military

(Fry *v.* Jones and another.)

service was uncertain, but to shear all the sheep on a certain manor, was good, because it could be rendered certain. 2 *Bac. Ab.* 342. The case of *Smith* v. *Colson*, 10 *Johnson*, 92, is decisive of the general principle.

The opinion of the court was delivered by

ROGERS, J.—The landlord's warrant states a lease of a grist mill, a house, and lot, in *Augusta* township, *Northumberland* county, for the term of one year, commencing on the 1st of *April*, 1825, for the one-third of the toll which the mill grinds, and avers, that one hundred and sixty and a half bushels of different kinds of grain, of the value of seventy-six dollars and eighty-five cents, still remain due and unpaid; and, this appears to have been the contract on which the distress was made. The plaintiff in replevin denies the right to distrain for two reasons: 1st, He contends, that *Fry* was not the tenant, but the servant of *Jones;* and, 2d, That the rent is uncertain. It would be extraordinary if the first proposition of the plaintiff in replevin should avail him, as it would destroy tenancy almost altogether in *Pennsylvania*. In consequence of the fluctuation in prices, such a thing as a fixed rent, either in kind or money, is scarcely known. We have almost always adopted the mode of renting for a share of the produce of the farm, which is preferred by tenant and landlord. If there is an advance of price, or an abundant harvest, both partake of the benefit; and, if the price should be low, or the crop should fail, the tenant avoids ruin. A difficulty has existed in relation to this matter from confounding a cropper with a tenant. If one hires a man to work his farm, and gives him a share of the produce, he is a cropper. He has no interest in the land, but receives his share as the price of his labour. The possession is still in the owner of the land, who alone can maintain trespass; nor can he distrain, for he does not maintain the relation of landlord and tenant, which is inseparable from the right of distress. *Fry* was put into possession of the house and mill, lives in the house with his family, and agrees to give *Jones* one-third of the toll. To say he is not a tenant, is confounding two things which are entirely distinct.

It is said the rent is uncertain, and, therefore, *Jones* had no right to distrain. In *Co. Litt.* 96, *a,* the principle which governs this case is clearly stated.

It is a maxim of law, that no distress can be taken for any services that are not put into certainty, nor can be *reduced to any certainty;* for, *id est certum, quod certum reddi potest;* for, *oportet quod certa res deducatur in judicium;* for, upon the avowry, damages cannot be recovered for that which neither hath certainty, nor can *be reduced to any certainty.* And yet, in some cases, the author says, there may be a *certainty in an uncertainty;* as, a man may hold of his lord to shear all the sheep depasturing within the lord's manor; and this is certain enough, albeit the land has sometimes a greater number, and sometimes a lesser number there; and

(Fry *v.* Jones and another.)

yet, this uncertainty being referred to the *manor*, which is *certain*, the lord may distrain for this *uncertainty. Et sic de similibus.* The uncertainty for which distress may not be had, is put by *Littleton* in the text, such as tenancy in Frankalmoigne. And, if they which hold their tenancy in Frankalmoigne will not, or fail to do such divine service, (as is said,) the lord may not distrain them for not doing this, &c., because it is not put in certainty what services they ought to do. In commenting on this text, Lord COKE explains what is meant by the uncertainty for which the lord cannot distrain. The services to be performed by a tenant in Frankalmoigne, are neither certain, nor can they by any means be reduced to a certainty. They who hold in Frankalmoigne, are bound of right before God to make orisons, prayers, masses, &c., and other divine services, not only for the souls of the grantor, or feoffor, but for the souls of their heirs which are dead, and for the prosperity and good life and good health of their heirs which are alive. *Co. Litt.* 95, *a, sect.* 135. In tenure in Frankalmoigne, no mention is made of any *manner of service;* for none can hold in Frankalmoigne if there be expressed any manner of *certain service* that he ought to do, &c. We hold the principle to be, that a distress is inseparably incident to every service, that may be reduced to a certainty. If that should be the rule, we are at a loss to conceive in what the inconvenience or difficulty consists. If the tenant keeps an account of the toll, which it is his duty to do, the rent may be reduced to the utmost certainty. Nor can we perceive the danger which may arise to the tenant; for his rights are abundantly protected. By an offer to comply with his contract, with which he is best acquainted, he can defeat the landlord. And for an excessive distress, the law, as in other cases, has provided him an ample remedy. The avowry is well enough, nor can the jury have any difficulty in estimating the damages. It is the interest of landlords and tenants, that the rights of the former should be protected. With right of distress unimpaired, a poor man can obtain a shelter and the means of livelihood for his family, which he would otherwise be unable to procure without security, which it would frequently be out of his power to obtain. Experience, which is the best test, satisfies us, that an interference with the remedies provided by the common law, causes mischief rather than good.

Judgment affirmed.