**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 24, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

ABRAHAM SEDILLO,

     Defendant - Appellant.

No. 13-2066
(D.C. No. 12-CR-00696-JAP-1)
(D.N.M.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **EBEL** and **KELLY**, Circuit Judges.

Defendant-Appellant Abraham Sedillo pleaded guilty to robbery and was sentenced to 51 months' imprisonment and three years' supervised release. He appeals from the sentence, challenging a firearm enhancement imposed under U.S.S.G. § 2B3.1(b)(2)(C). The district court imposed the enhancement after finding that Mr. Sedillo brandished a handgun during a restaurant robbery. United States v. Sedillo, No. 1:12-cr-00696-JAP-1 (D.N.M. May 31, 2013). Mr. Sedillo argues that the enhancement was improper as it was based on

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

uncorroborated hearsay. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

Background

Mr. Sedillo pleaded guilty to a September 2011 robbery of Blake's Lotaburger in Moriarty, New Mexico, in violation of 18 U.S.C. § 1951 and 18 U.S.C. § 2. 1 R. 7, 9. He received a five-level sentencing enhancement under § 2B3.1(b)(2)(C). According to the presentence report, two men robbed the restaurant, taking $300 in rolled coins kept in a plastic container called the "safe." 2 R. 7-8. One robber, who was carrying a folding knife with an orange handle, stayed at the front of the restaurant with a counter employee while a second robber, later identified as Mr. Sedillo, went to the back of the restaurant where a second employee was washing dishes. 2 R. 7-8. Mr. Sedillo grabbed the second employee by the arm, pointed a gun at him, and took him to the front of the restaurant, after which the two robbers soon fled. 2 R. 8. The second employee identified Mr. Sedillo as a former employee of the restaurant. 2 R. 8. Mr. Sedillo was described as wearing a blue bandana and black gloves and carrying a .357- or .38-caliber revolver. 2 R. 7-8.

In a subsequent search of the getaway car—registered to Mr. Sedillo's wife—police found a folding knife with an orange handle and a bag containing about $40 worth of coins. 2 R. 8, 10. A black glove, along with drug

paraphernalia, was discovered in a search of Mrs. Sedillo's home. 2 R. 9. No gun was ever recovered. 2 R. 12.

In February, 2012, an agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF agent") traveled to Moriarty to interview the second employee, accompanied by an officer with the Moriarty police department. 2 R. 11. During the interview, the second employee "reported the same information as before," adding details about his working with Mr. Sedillo at the restaurant and Mr. Sedillo's knowledge of closing patterns. 2 R. 11. The ATF agent also listened to recorded telephone conversations Mr. Sedillo had with his wife while in custody. 2 R. 12. During one phone call, the two discussed a firearm, bandanas, and sweatshirts that had been in the getaway vehicle but not yet found by police. 2 R. 12.

Several months later, the ATF agent re-interviewed the second employee by telephone "to determine his knowledge of firearms." 2 R. 12. During the interview, the second employee stated that he (1) once owned a .38 caliber revolver, (2) had been around firearms for many years, and (3) completed basic training in the military, which furthered his knowledge of weapons. 2 R. 12. The second employee explained that the revolver Mr. Sedillo was carrying was either a .357- or .38-caliber but that the two guns were very similar and could be distinguished only by further inspection. 2 R. 12. Mr. Sedillo declined to provide his version of events, 2 R. 13, although he admitted during police

questioning that he worked the evening shift at the restaurant, giving him direct knowledge of closing procedures, 2 R. 6.

Before sentencing, Mr. Sedillo filed a sentencing memorandum objecting to the firearm enhancement on two grounds: (1) that no gun was ever recovered; therefore, the government failed to provide evidence that an actual gun was used in the robbery; and (2) that the enhancement required a factual finding by a jury, which did not occur. 1 R. 12.

The ATF agent was present at the sentencing hearing; the second employee was not. In order to "speed this up," the district court had the government proffer the substance of the testimony of the ATF agent with an opportunity for the ATF agent to agree or disagree with the proffer and add to it. 3 R. 5-8. Mr. Sedillo's counsel then cross-examined the ATF agent. There was no objection to this procedure.

According to the proffer, the ATF agent would testify that the second employee was knowledgeable about weapons and identified Mr. Sedillo as carrying either a .357- or .38-caliber revolver during the robbery. 3 R 6-7, 8. In addition, the ATF agent would testify that he listened to Mr. Sedillo's recorded telephone conversations from jail regarding items not yet found by police, including a gun. 3 R. 7-8. Based on this evidence, the ATF agent would testify that he thought that the second employee's testimony was reliable and that Mr. Sedillo did indeed posses a weapon during the robbery. 2 R. 7.

On cross examination, the ATF agent agreed with Mr. Sedillo that (1) other devices, such as pellet guns and BB guns, can look like handguns; (2) misidentifications can occur in emotionally charged environments such as robberies; and (3) a gun was never recovered.  3 R. 9-11.  Mr. Sedillo made no other objections to the presentence report, which the district court adopted.[1]  3 R. 13.

The district court found by a preponderance that the second employee was knowledgeable about guns and identified Mr. Sedillo as brandishing a revolver in connection with the Lotaburger robbery.  3 R. 13-14.  Accordingly, the district court applied the firearm enhancement to Mr. Sedillo's sentencing calculation.  3 R. 14.  This appeal followed.

Discussion

Factual findings supporting a sentence enhancement must be proven by a preponderance of the evidence, and we review such findings for clear error.  United States v. Tindall, 519 F.3d 1057, 1063-64 (10th Cir. 2008).

Mr. Sedillo acknowledges that reliable hearsay may be used in determining a non-capital sentence.  Aplt. Br. 7 (citing United States v. Bustamante, 454 F.3d 1200, 1202 (10th Cir. 2006)).  However, Mr. Sedillo argues that the district court

---

[1]  Mr. Sedillo made an earlier objection to the presentence report that is not relevant to this appeal.  3 R. 2-4.

- 5 -

erred because the evidence it considered failed to provide the "minimal indicia of reliability" required by the Sentencing Guidelines, based primarily on our holding in United States v. Fennell, 65 F.3d 812, 813 (10th Cir. 1995). Aplt. Br. 8-10. In his reply brief, Mr. Sedillo also argues that (1) the ATF agent only talked with the second employee over the phone, (2) the government did not provide an affidavit by the second employee, (3) the second employee's allegations about a firearm are not corroborated, (4) the government cannot explain why the firearm was not recovered, (5) the government did not provide testimony from the other Lotaburger employee who was at the counter, (6) the robbery took only 30 seconds to complete, (7) the second employee was under incredible stress, (8) the ATF agent conceded that a person familiar with firearms could mistakenly identify an item made to look like a firearm as a real firearm, (9) Mr. Sedillo's wife denied that Mr. Sedillo owned or had access to firearms at the time of the robbery, (10) the ATF agent interviewed the second employee almost a year after the robbery, and finally, (11) the district court did not explain its credibility finding. Aplt. R. Br. 2-7. We are not persuaded.

In Fennell, we held that the unsworn testimony of a defendant's girlfriend used to support a sentencing enhancement lacked the required "minimal indicia of reliability" because the probation officer who prepared the presentence report took her testimony over the telephone and did not personally observe her demeanor such that he could determine her veracity, and no other evidence

corroborated the girlfriend's unsworn testimony.  Fennell, 65 F.3d at 813.  Rather, other evidence in the record—namely, the decision by the state to sentence the defendant to a lesser charge—seemed to undermine the girlfriend's testimony.  Id.

This case is readily distinguishable.  Here, an experienced ATF agent—and not merely the probation officer writing the presentence report—interviewed the second employee twice, once in person and once over the phone, and found him to be credible.  Second, the second employee's statements were corroborated by Mr. Sedillo's conversations with his wife, during which they specifically discussed that a gun was one of the three items not yet recovered by the police.  Third, the second employee knew Mr. Sedillo, having worked with him.  Finally, nothing in the record supports a contrary conclusion.  The victim's statements were consistent both to the ATF agent and to other police officers, and Mr. Sedillo offered no evidence to the contrary.  Thus, we conclude that the district court did not commit clear error by relying on the hearsay statements for the firearm enhancement.  See United States v. Cook, 550 F.3d 1292, 1297 (10th Cir. 2008).

Mr. Sedillo makes much of the fact that it was critical to cross-examine the second victim because the gun was never found and the victim may have mistaken a gun for a gun-like weapon.  Aplt. Br. 10.  But as noted, reliable hearsay is permissible for sentencing purposes, and the district court is free to accept or reject it.  See, e.g., United States v. Beaulieu, 893 F.2d 1177, 1179-81 (10th Cir. 1990).  Explicit findings as to why the district court found the ATF agent credible

are not required.[2] <u>Allied Van Lines, Inc. v. Small Bus. Admin.</u>, 667 F.2d 751, 753 (8th Cir. 1982) ("It is well established that the trial court does not need to make specific findings on all facts but only must formulate findings on the ultimate facts necessary to reach a decision."); <u>cf.</u> <u>Woods Constr. Co. v. Pool Constr. Co.</u>, 314 F.2d 405, 406-07 (10th Cir. 1963).

Mr. Sedillo also challenges whether the ATF agent who appeared before the district court actually met with the second employee in person, Aplt. R. Br. 2; whether the recorded jailhouse conversations mentioned a firearm, Aplt. R. Br. 4; and whether the record provides any basis that the second employee made a statement about the gun to anyone other than the ATF agent, Aplt. R. Br. 7.

---

[2] Mr. Sedillo relies on <u>United States v. Palmer</u>, 248 F.3d 569, 571 (7th Cir. 2001) (holding that a district court's finding on the quantity of crack cocaine was clearly erroneous in part because it did not explain why a gang member's statements about quantity were credible). <u>Palmer</u> is easily distinguished in two ways. First, in reversing the district court, the <u>Palmer</u> court stressed that a sentencing court must explicitly demonstrate how it arrived at a particular drug quantity because of the importance of quantity in sentencing—findings that the district court failed to provide, including any explanation as to why the drug amount offered by one gang member was credible. <u>Id.</u> The sentencing enhancement in this case does not require such a calculation. Second, nothing in <u>Palmer</u> stands for the proposition that a sentencing court *must* make a finding of witness credibility; it merely noted that, among other things, no explanation was provided as to why a particular witness' statements were considered credible, given contrary evidence in the record. <u>Id.</u>

These issues were not raised below, and we will not address them on appeal.  See

United States v. Mora, 293 F.3d 1213, 1216 (10th Cir. 2002).

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge