**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3689
_____


UNITED STATES OF AMERICA
v.

ROBERT PALADINO,
Appellant
_____


On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. Action No. 2-04-cr-00172-001)
District Judge:  Hon. David S. Cercone

Argued:  June 24, 2014
_____


Before:  FUENTES, GREENAWAY, JR., and NYGAARD,
*Circuit Judges*.

(Filed: October 8, 2014)


Sarah S. Gannett (Argued)
Federal Community Defender Office

For the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106

      *Attorney for Appellant*

Rebecca Ross Haywood, Esq.
Michael L. Ivory (Argued)
United States Attorney's Office
700 Grant Street
Suite 4000
Pittsburgh, PA 15219

      *Attorneys for Appellee*

_____

OPINION
_____

GREENAWAY, JR., *Circuit Judge*.

Robert Paladino appeals the District Court's judgment revoking supervised release and imposing a sentence of imprisonment. Because Paladino was denied the right of allocution at sentencing, we vacate and remand to the District Court for resentencing.

## I.

In June 2004, Appellant Robert Paladino responded to an internet advertisement placed by an undercover federal agent that offered videotapes of young boys engaged in graphic and explicit sexual conduct. Following a number of e-mail conversations, Paladino agreed to provide the undercover agent with videos of minor age boys engaged in sexually explicit conduct in exchange for those offered by the undercover agent. Later that month, after Paladino picked up the package delivered by the undercover agent, law enforcement tried to arrest Paladino, but he resisted arrest and fled. After a reckless and dramatic car chase, during which Paladino struck several cars and discarded the package containing the videos, Paladino was apprehended. Law enforcement then executed a search warrant at Paladino's residence, and recovered videotapes, compact discs, and a laptop computer. A search of the laptop computer revealed that it contained 5,201 files with images of child pornography.

On November 21, 2006, Paladino pled guilty to one count of distributing material depicting the sexual exploitation of a minor, in violation of 18 U.S.C. § 2252(a)(1). In his plea agreement, Paladino also agreed to waive his "right to take a direct appeal from his conviction or sentence." *United States v. Paladino*, 286 F. App'x 803, 803 (3d Cir. 2008).

On April 20, 2007, the District Court sentenced Paladino to one hundred twenty months' imprisonment, to be

followed by a ten-year term of supervised release, and a special assessment in the amount of one hundred dollars.[1]

Paladino filed a direct appeal. On August 15, 2008, this Court affirmed Paladino's sentence because "Paladino waived his right to appeal his sentence in his plea agreement" and none of the exceptions to that waiver were applicable. *Id.*

On April 24, 2013, Paladino was released from custody and the Probation Office for the Western District of Pennsylvania began supervising him.

Between July and August 2013, Paladino's probation officer filed two petitions reporting that Paladino had violated three supervised release conditions—namely the "condition

---

[1] At that time, the District Court also imposed conditions of Paladino's supervised release, including that Paladino not "possess any materials, including pictures, photographs, books, writings, drawings, videos or video games depicting and/or describing child pornography as defined by 18 U.S.C. Section [] 2256(8)." (App. 104.) In October 2012, Paladino agreed to a modification of certain supervised release conditions, including a modification stating that the "defendant shall not possess or access with intent to view any materials, including pictures, photographs, books, writings, drawings, videos, or video games depicting and/or describing child pornography as defined at 18 U.S.C. § 2256(8), or obscene visual representations of the sexual abuse of children as defined at 18 U.S.C. §1466A." (App. 113.)

4

obligating Defendant not to associate with persons convicted of a felony," the "condition obligating Defendant to abide by all provisions of the Computer Restriction and Monitoring Program," and the "condition obligating the Defendant to participate in a mental health treatment program and/or sex offender treatment program as directed by his probation officer."[2]

On August 12, 2013, at Paladino's revocation hearing, the District Court first asked defense counsel if Paladino contested any of the violations alleged in the probation officer's petitions. In response, Paladino's counsel stated that Paladino challenged the missed treatment violation, as "Mr. Paladino indicates [that] it's a misunderstanding," and, at another point in time, defense counsel stated that another "thing we don't agree on is whether this Defendant can self-report as he has requested . . . for a day or so." (App. 121-22.) The record reflects that there was no further discussion of Paladino's challenge to the missed treatment violation or to

---

[2] Specifically, the petitions argued that Paladino violated those three conditions because Paladino had been "discharged from [the Veterans Administration Domiciliary Program] due to accessing what they believed to be child pornography," "admitted to viewing boys in their underwear" on "the computers at the Carnegie Library," "admitted . . . to contact[ing] felons that are incarcerated in various correctional institutions," had been deceptive during a polygraph examination when asked if he had engaged in inappropriate sexual conduct, and "failed to show up or cancel" a treatment appointment on June 24, 2013. (App. 116, 118.)

his self-reporting request. Ultimately, the District Court denied the self-reporting request.

The District Court also asked whether the parties had "reached a joint recommendation as to the new sentence to be imposed." (*Id.*) The Government and defense counsel indicated their agreement to "a period of imprisonment of eight months to be followed by the continued supervision of the ten years." (*Id.*) The District Court then asked "Mr. Paladino, is that your understanding?" and Paladino responded "Yes." (*Id.* at 122.) The record reflects that this was the only point at which the District Court personally addressed Paladino at the revocation hearing.

At the end of the revocation hearing, the District Court sentenced Paladino to eight months' imprisonment to be followed by a term of supervised release of one hundred sixteen months, which is ten years of supervised release "minus the amount of time [Paladino] has already spent on supervised release." (*Id.* at 122-23.) In addition, the District Court imposed the original and modified "conditions that were part of [Paladino's] supervised release" for the child pornography conviction. (*Id.* at 123.) Paladino's counsel made no objection to the supervised release conditions that the District Court imposed.

Paladino now appeals, and in so doing, makes two arguments. First, Paladino argues that the District Court committed plain error by failing to "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence," Fed. R. Crim. P. 32(i)(4)(A)(ii), and therefore we should vacate and remand for resentencing.

6

Second, Paladino challenges the supervised release condition, imposed at his revocation hearing, which required Paladino to "not possess or access with intent to view any materials, including pictures, photographs, books, writings, drawings, videos or video games depicting and/or describing child pornography as defined by 18 U.S.C. § 2256(8), or obscene visual representation of the sexual abuse of children as defined at 18 U.S.C. § 1466A." (App. 113.) Specifically, Paladino argues that this condition of supervised release is unconstitutionally overbroad and vague, and was imposed without any justification.

## II.

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291.

Given Paladino's failure to preserve his two objections by raising them at the revocation hearing, we review his objections for plain error. *Puckett v. United States*, 556 U.S. 129, 135 (2009) (unpreserved errors are reviewable for plain error, pursuant to Rule 52(b) of the Federal Rules of Criminal Procedure); *United States v. Plotts*, 359 F.3d 247, 248-49 (3d Cir. 2004); *see also* Fed. R. Crim. P. 52(b).

## III.

Rule 32(i)(4)(A)(ii) of the Federal Rules of Criminal Procedure requires that, "[b]efore imposing sentence, the court must . . . address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." Fed. R. Crim. P. 32(i)(4)(A)(ii). Though codified in the twentieth century, the "design of [this rule] did not begin with its promulgation; its legal provenance

7

was the common-law right of allocution," which was recognized "[a]s early as 1689." *Green v. United States*, 365 U.S. 301, 304 (1961). While "major changes . . . have evolved in criminal procedure" since the seventeenth century and additional rights have been accorded to defendants since that time, "[n]one of these modern innovations lessens the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation," for the "most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." *Id.*

In *United States v. Adams*, this Court recounted the historical and contemporary significance of the right of allocution and established that, at a sentencing hearing, a district court's denial of the right of allocution will generally result in resentencing under plain error review. 252 F.3d 276, 289 (3d Cir. 2001). Three years later, in *United States v. Plotts*, this Court pronounced that "a defendant's right of allocution extends to revocation hearings." 359 F.3d 247, 250 (3d Cir. 2004).[3]

"For reversible plain error to exist, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Tai*, 750

---

[3] The Federal Rules of Criminal Procedure were subsequently amended to expressly provide allocution rights at revocation hearings. *See* Fed. R. Crim. P. 32.1(b)(2)(E) (providing that defendants at revocation hearings are entitled to "an opportunity to make a statement and present any information in mitigation").

F.3d 309, 313-14 (3d Cir. 2014) (citing *Johnson v. United States*, 520 U.S. 461, 466-67 (1997)).

In *Adams* and *Plotts*, this Court concluded that the district court committed "error" by failing to address the defendant personally prior to sentencing. *Adams*, 252 F.3d at 286; *Plotts*, 359 F.3d at 250-51. We also concluded that the error was "plain" because it was "clear or obvious." *Adams*, 252 F.3d at 286 ("[W]hen [the District Court] failed to personally address Adams prior to sentencing[] . . . . [despite the] clear duty to do so, this error was 'plain,' because it was 'clear' or 'obvious.'" (citations omitted)); *Plotts*, 359 F.3d at 251 (finding that the district court's error was "clear and obvious" where "the weight of appellate authority" indicated that violation of the allocution right constitutes plain error); *see also Olano*, 507 U.S. at 737.

With respect to the third element in the plain error review analysis— which asks whether the error "affects substantial rights," or put another way, was prejudicial—this Court indicated that, in the context of violations of the right of allocution, "as a general matter . . . prejudice should be *presumed* whenever the opportunity exists for this violation to have played a role in the district court's sentencing decision." *Adams*, 252 F.3d at 289 (emphasis added).[4] Lastly, "[i]n *Adams*, we stated without qualification that denial of the right

---

[4] We made this pronouncement because, *inter alia*, any other rule, such as one requiring the defendant to "point to statements that he would have made at sentencing, and somehow show that these statements would have changed the sentence imposed by the District Court," would place "an onerous burden" on the defendant. *Adams*, 252 F.3d at 287.

of allocution affects the 'fairness, integrity or public reputation of judicial proceedings,'" *Plotts*, 359 F.3d at 250 n.6 (quoting *Adams*, 252 F.3d at 288), such that the fourth, discretionary element in the plain error analysis is satisfied where a violation of the right of allocution has been established.

\* \* \* \* \* \* \* \* \*

Against this backdrop, we assess Paladino's argument that, as in *Plotts*, the District Court here committed plain error at his revocation hearing by "failing to offer Mr. Paladino the chance to speak on his own behalf" and "den[ying] him the opportunity to influence his term of imprisonment, his term of supervised release, or his conditions of supervised release." *See, e.g.*, Appellant Br. 13. We agree.

While the record reflects that the District Court did address Paladino once—to ask whether Paladino understood that he and the Government agreed to an eight-month term of imprisonment—the parties do not dispute that the District Court did not address Paladino at any other time during the revocation hearing. *See, e.g.*, Appellee Br. 11 (stating that "[i]n the present matter the trial court asked Paladino whether the terms of the agreement he had reached with the government had been accurately stated on the record" and that the "court did not invite Paladino to make any additional statements"); Appellant Br. 14 ("At Mr. Paladino's revocation hearing, the court never allowed Mr. Paladino the opportunity to make a statement or present any information in mitigation.").

As the Supreme Court has previously indicated, however, district courts must "unambiguously address

themselves to the defendant" and "leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing." *Green v. United States*, 365 U.S. 301, 305 (1961); *see also Adams*, 252 F.3d at 279-80 (right of allocution violated when district court asked defense counsel, but not defendant himself, whether defendant wished to exercise his right of allocution).

Therefore, we find that the District Court here committed an "error" and that error was "plain" because "the weight of appellate authority"—including our pronouncements in *Plotts* and *Adams* about the importance of the right of allocution and the resentencing remedy that may result from establishing a violation of that right—"is sufficient to render the District Court's error clear and obvious." *Plotts*, 359 F.3d at 250-51; *see also Adams*, 252 F.3d at 286.

Second, "we . . . conclude that prejudice to 'substantial rights' may be presumed in this case because allocution could have played a role in the [District] Court's sentencing decision." *Plotts*, 359 F.3d at 251 (citing *Adams*, 252 F.3d at 287). Specifically, as in *Plotts*, federal statutory law did not require the District Court here to impose any minimum term of imprisonment upon revocation of supervised release. *See* 18 U.S.C. § 3583(e)(3) (permitting imprisonment for "all or part" of the term of defendant's supervised release); *id.* § 3583(h); *Plotts*, 359 F.3d at 251. Furthermore, as Paladino argues, the District Court imposed upon him a sentence of eight months, which is in the middle of the Guidelines range of five to eleven months. *See, e.g.*, Appellant Reply Br. 1-6. Thus, had Paladino been afforded the opportunity to "speak or present any information to mitigate the sentence," Fed. R. Crim. P. Rule 32(i)(4)(A)(ii), Paladino's statements may have

prompted the District Court to exercise its discretion, in accordance with federal law, to impose a lesser sentence or, indeed, no term of imprisonment at all. *See, e.g.*, *Adams*, 252 F.3d at 287 (finding that, because defendant "was sentenced roughly in the middle of the applicable Guidelines range . . . the District Court clearly retained discretion to grant Adams a lower sentence").

Appellee argues that the presumption of prejudice applied in *Plotts* and *Adams* does not apply here because the parties essentially entered into a plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure that was binding on the District Court, such that any allocution on the part of Paladino could not possibly have affected the sentence. *See* Appellee Br. at 13-15. This argument must fail. Even assuming that the oral plea agreement here implicated Rule 11(c)(1)(C) in particular—a proposition for which we find no support in the record—a district court still retains discretion to accept or reject such an agreement. *See, e.g.*, *Freeman v. United States*, 131 S. Ct. 2685, 2692 (2011) ("Rule 11(c)(1)(C) permits the defendant and the prosecutor to agree on a specific sentence, but that agreement does not discharge the district court's independent obligation to exercise its discretion."). Thus, any argument that Paladino's statements could have no impact on the District Court—because its hands were essentially tied and there were no decisions left for it to make—must fail.[5]

---

[5] Contrary to the Government's assertions, the agreed-upon term of imprisonment is not the only relevant matter upon which a defendant might speak. As we indicated in *Adams*, allocution may play a role in a district court's sentencing decision "whenever a searching review of the district court

Having found that the first three conditions of the plain error analysis are met, we also find that "denial of the right of allocution is not the sort of 'isolated' or 'abstract' error that we might determine does not impact the 'fairness, integrity or public reputation of judicial proceedings.'" *Plotts*, 359 F.3d

record reveals that there are *any* disputed facts at issue at sentencing, or any arguments raised in connection with sentencing, that if resolved in the defendant's favor would have reduced the applicable Guidelines range or the defendant's ultimate sentence." *Adams*, 252 F.3d at 287; *id.* (indicating that, even when a defendant is sentenced at the bottom of the Guidelines range, this Court can still find that the opportunity existed for a different sentencing outcome).

The record reflects that, at the very least, Paladino's counsel challenged the missed treatment violation, indicating that there had been a misunderstanding, but this disputed issue remained unresolved at the time when the District Court sentenced Paladino. *Adams* counsels against unresolved fact disputes and arguments—particularly those to which a defendant might speak. Furthermore, had Paladino exercised the right of allocution, he might have anticipated that the District Court could impose supervised release conditions and might have spoken so as to influence that sentencing decision. Here, the District Court, at the behest of the Government, issued the original and modified conditions imposed upon Paladino for his prior child pornography conviction, without any personal solicitation of Paladino's statements relating to these sentencing decisions.

at 251 (quoting *Adams*, 252 F.3d at 288). As such, this is an appropriate case in which to grant relief.

Thus, we conclude that the District Court committed plain error in denying Paladino's right of allocution at his revocation hearing, and we will therefore remand this case for resentencing on this ground. As for Paladino's second argument regarding the constitutionality of a particular condition of supervised release, our "resentencing remedy . . . obviates the need to decide that issue." *Adams*, 252 F.3d at 277.[6]

V.

In accordance with the foregoing, we will vacate the District Court's order, entered on August 20, 2013, and remand for resentencing.

---

[6] Here, the District Court set forth no reasons for its imposition of the condition challenged in this appeal (nor did it set forth any reasons for any of the other conditions it imposed at the revocation hearing). "While the district court has broad discretion in fashioning conditions of supervised release," when resentencing Paladino we advise the District Court to "state the reasons in open court for imposing [its] particular sentence." *United States v. Loy*, 191 F.3d 360, 371 (3d Cir. 1999).