NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3513
_____

UNITED STATES OF AMERICA,

v.

JEROME LAMONT KELLY,

Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(2-08-cr-00374-012)
District Judge: Hon. Joy Flowers Conti
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 30, 2015
_____

Before: GREENAWAY, JR., SCIRICA, and ROTH, *Circuit Judges.*

(Opinion Filed: December 4, 2015)
_____

OPINION*
_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

GREENAWAY, JR., *Circuit Judge*.

Jerome Lamont Kelly appeals from his conviction for conspiracy to distribute and possess with intent to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine, and fifty grams or more of a mixture and substance containing a detectable amount of cocaine base, contrary to 21 U.S.C. § 846. Kelly asserts that: (1) the evidence presented at trial was sufficient to establish only a buyer-seller relationship between him and members of the charged conspiracy, not that Kelly was himself a member of the conspiracy; (2) the government's drug-trafficking expert impermissibly opined that Kelly was a conspirator; and (3) the prosecutor committed misconduct in his closing argument. For the following reasons, we will affirm.[1]

Kelly argues first that the evidence was insufficient to support his conspiracy conviction. As the government concedes, Kelly preserved this alleged error. We apply a "particularly deferential standard" to challenges to the sufficiency of the evidence: "[w]e 'review the record in the light most favorable to the prosecution to determine whether any rational trier of fact could have found proof of guilt[] beyond a reasonable doubt.'" *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc) (second alteration in original) (quoting *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005)). "To establish a conspiracy, the government must prove beyond a reasonable

---

[1] The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231; we have jurisdiction under 28 U.S.C. § 1291.

2

doubt:  (1) a shared unity of purpose; (2) an intent to achieve a common illegal goal; and (3) an agreement to work toward that goal."  *United States v. John-Baptiste*, 747 F.3d 186, 204–05 (3d Cir.) (citations omitted), *cert. denied sub nom. Brooks v. United States*, 134 S. Ct. 2324 (2014), *and cert. denied sub nom. Edwards v. United States*, 134 S. Ct. 2889 (2014).  The government may prove its case by either "direct or circumstantial evidence."  *Id.* (citation omitted).

Kelly is correct that "a simple buyer-seller relationship, without any prior or contemporaneous understanding beyond the sales agreement itself, is insufficient to establish that the buyer was a member of the seller's conspiracy."  *United States v. Perez*, 280 F.3d 318, 343 (3d Cir. 2002) (quoting *United States v. Gibbs,* 190 F.3d 188, 198 (3d Cir. 1999)).  Nevertheless, "even an occasional supplier . . . can be shown to be a member of the conspiracy by evidence, direct or inferential, of knowledge that she or he was part of a larger operation."  *United States v. Price*, 13 F.3d 711, 728 (3d Cir. 1994) (citation omitted).[2]

---

[2]     Kelly invites us to reconsider four factors that this Circuit applies to determine whether a defendant possessed the requisite knowledge of the conspiracy in light of the Seventh Circuit's determination that "most of [those] factors did not actually distinguish conspiracies from buyer-seller relationships."  *United States v. Brown*, 726 F.3d 993, 999 (7th Cir. 2013), *cert. denied*, 134 S. Ct. 1876 (2014).  As discussed below, we find sufficient evidence to support the jury's conclusion that Kelly knew he was part of a larger operation.  We therefore do not reach the four-factor test upon which the District Court relied.

Although Kelly was heard on only seven of the more than 60,000 calls that the government intercepted while investigating this conspiracy, those seven calls, together with the explanatory testimony by government witnesses, suffice to enable a rational jury to find beyond a reasonable doubt that Kelly was a member of the conspiracy rather than a mere customer. Phone records indicate that Kelly and Alford, the head of the charged conspiracy, discussed third parties in a way that would enable a rational jury to conclude that Kelly was aware of Alford's transactions with drug suppliers and, by extension, of Alford's role within a larger operation. *See* J.A. at 1228–29, 1236. The phone transcripts, as interpreted by the drug-trafficking expert who testified for the government, also reveal that Kelly consulted Alford when Kelly encountered difficulty "cooking" the cocaine that he had purchased to form crack, which a rational trier of fact could interpret to demonstrate Kelly's role as a processor and distributor of crack and as a co-conspirator of Alford. *See* J.A. at 585–89, 1249–51. We therefore conclude that there is sufficient evidence to support the jury's conclusion that Kelly was a member of the conspiracy.

Kelly did not preserve either of his other arguments below; accordingly, we review these claims for plain error. "For reversible plain error to exist, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Paladino*, 769 F.3d 197, 201 (3d Cir. 2014) (quoting *United States v. Tai,* 750 F.3d 309, 313–14 (3d Cir. 2014)). An error that "affec[ts] substantial rights . . . in most cases .

4

. . means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993).

Kelly argues that the government's drug-trafficking expert violated Rule 704's prohibition against testimony by an expert witness "about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense." Fed. R. Evid. 704 (b). Defense counsel asked whether the expert would agree that "two people [who] are on the phone and talking about cooking up crack," without any reference to the fact that "one purchased it from [the other]," were not necessarily "conspiring to sell those drugs together." J.A. at 960. The witness ultimately responded: "That's a possibility, but not the calls that we listened to. But in your hypothetical, it's a possibility, yes." J.A. at 961. Kelly asserts that this response transgressed Rule 704 through its implication that Kelly and Alford were co-conspirators and that Kelly therefore had the mens rea necessary to support a conspiracy conviction. We find it impossible to determine conclusively that this laconic response constitutes anything more than an attempt to distinguish the subject call from the hypothetical posed by defense counsel. In light of the evidence that supports Kelly's membership in the conspiracy, moreover, this answer does not create the prejudice necessary to demonstrate plain error.

Kelly's contention that the prosecutor's closing remarks require reversal is equally unavailing. Kelly argues that the prosecutor: (1) misstated the law by suggesting that anyone who purchases cocaine can be convicted of conspiracy because cocaine

necessarily comes from another country; (2) denigrated Kelly, his co-defendant Alonzo Lamar Johnson, and defense counsel by calling their arguments "offens[ive]"; and (3) accused the defendants of calling the government witnesses "liars." According to Kelly, the district court's failure to spontaneously cure these remarks rises to the level of reversible error.

We disagree. "When analyzing a claim of prosecutorial misconduct, the key question is whether a state prosecutor's comments to the jury 'so infec[ted] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Rolan v. Coleman*, 680 F.3d 311, 321 (3d Cir. 2012) (alteration in original) (quoting *Greer v. Miller,* 483 U.S. 756, 765 (1987)). To answer this question, "a 'reviewing court must examine the prosecutor's offensive actions in context and in light of the entire trial, assessing the severity of the conduct, the effect of the curative instructions, and the quantum of evidence against the defendant.'" *Id.* (quoting *Moore v. Morton,* 255 F.3d 95, 107 (3d Cir. 2001)). Here, we find that none of the complained-of comments call Kelly's conviction into question.

First, although the prosecutor did juxtapose cocaine production and distribution—which involves many steps and therefore offers many levels of potential conspiracy—with the growth and sale of marijuana—which could be a one-person job, J.A. at 1111–13—he spoke much more concretely about Kelly's co-conspirators, or those who spoke to and about Kelly in the phone recordings, J.A. at 1118–20. Second, the prosecutor's statement that defense counsel made certain suggestions "unbelievably" and rhetorical

6

question as to whether those suggestions "offend [the jurors'] sensibility" are permissible attacks on Kelly's credibility. *Rolan*, 680 F.3d at 324. Finally, the prosecutor's statements that defense counsel had labelled certain government witnesses "liar[s]," J.A. at 1165, are not misconduct; rather, they tend to counter such remarks by the defense as "the Government has presented to you chapter after chapter of the book of fiction that we call this trial," J.A. at 1124. In short, we perceive no "denial of due process" in these alleged instances of prosecutorial misconduct to which defense counsel made no contemporaneous objection. *United States v. Lee*, 612 F.3d 170, 194 (3d Cir. 2010).

For the foregoing reasons, we will affirm.